

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Cecil H. Tate
County Attorney
Bailey County
Muleshoe, Texas

Dear Sir:

Opinion No. O-4640
Re: Can the Bailey County Demo-
cratic Executive Committee
legally refuse to print or
have printed a ballot for a
run-off election for State
and Congressional Candidates,
where there is no tie, or run-
off necessary for precinct,
county and district officers
in the second primary of Au-
gust 22, 1942?

Your letter of June 3, 1942, requesting our opin-
ion on the above stated question reads in part as follows:

"I have a question that I would like to have
an opinion on, and will appreciate it just as
quickly as possible, as it applies to the Primary
Election of July 25th, 1942, and also as to the
run-off election of August 22nd, 1942. Question
is as follows:

"Can the Bailey County Democratic Executive
Committee, in their discretion, legally refuse
to print or have printed a ballot, for a run-off
election for State and Congressional Candidates,
where there is no tie, or run-offs necessary for
Precinct, County and District Officers, in the
Second Primary of August 22nd, 1942?

". . . ."

Your second letter supplementing the above men-
tioned letter reads as follows:

"In connection with the enclosed letter, ask-
ing for an opinion on election question, will state

Honorable Cecil H. Tate, Page 2

that the Executive Committee of Bailey County, Texas, in going on the theory that as all County and Precinct and District offices, are not contested, there is no necessity for the County and Precinct Candidates of Bailey County, Texas, to be assessed for an election in which their names will not appear as a candidate. All Precinct, District and County Candidates will be elected at the first primary on July 25th, 1942; and said Executive committee see no reason why said Candidates should be assessed to pay for the Second Primary, when it is not to the interest of any of said County and Precinct Candidates.

"This is a matter that is going to be decided by the Democratic Executive, on the 13th day of this month, and if possible, would sure like to have an opinion by that time."

Article 3102, Vernon's Annotated Civil Statutes provides in part:

". . . No person shall be declared the nominee of any political party at any primary election for any State or District office unless he has complied with every requirement of all laws applicable to primary and other elections, and has received a majority of all the votes cast at such primary elections for all candidates for such office. If at the general primary election for any political party, no candidate becomes the nominee for any State or District office under this article, a second primary election shall be held by such political party, in the State or such District, or Districts, as the case may be, on the fourth Saturday in August succeeding such general primary election, and only the names of the two candidates who receive the highest number of votes for any office for which nomination was made at the general election shall be placed on the official ballot as candidates for such office at such second primary. The second primary election shall be conducted according to the law prescribed for conducting the general primary election, and the candidates receiving a majority of all votes cast for the office to which they aspire shall be declared the

Honorable Cecil H. Tate, Page 3

nominee for their respective offices. Any political party may hold a second primary election on the fourth Saturday in August to nominate candidates for any County or Precinct office, where a majority vote is required to make a nomination; but at such second primary, only the two candidates who receive the highest number of votes at the general primary for the same office shall have their names placed upon the official ballot. Nominations of candidates to be voted for at any special election shall be made at a primary election at such time as the party executive committee shall determine, but no such committee shall ever have the power to make such nominations. . . ."

Article 3106, Vernon's Annotated Civil Statutes reads as follows:

"The county executive committee shall decide whether the nomination of county officers shall be by majority or plurality vote, and, if by a majority vote, the committee shall call as many elections as may be necessary to make such nomination, and in case the committee fails to so decide, then the nomination of all such officers shall be by a plurality of the votes cast at such election."

In view of Article 3102 and Article 3106, supra, it is apparent that the county executive committee can decide whether the nomination of county officers shall be by majority or plurality vote. However, no person shall be declared the nominee of any political party at any primary election for any State or district office unless he has complied with every requirement of all laws applicable to primary and other elections, and has received a majority of all the votes cast at such primary election for all candidates for such office. If at the general primary election for any political party, no candidate becomes a nominee for any State or district office (under Article 3102, supra) a second primary election shall be held by such political party, in the State or such district, or districts, as the case may be, on the fourth Saturday in August succeeding the general primary election, and only the names of the two candidates who receive the highest number of votes for any office for which the nomination was made at the general primary election shall be

Honorable Cecil H. Tate, Page 4

placed on the official ballot as candidates for such office at such second primary.

Article 3116, Vernon's Annotated Civil Statutes provides in effect that no person's name shall be placed on the ballot as a candidate for a district, county or precinct office who has not paid to the county executive committee the amount of the estimated expense of holding such primary apportioned to him by the committee, and then provides for certain exceptions in the following language:

"Provided, however, that no candidates for nomination for chief justice or associate justice of a court of civil appeals or for representative in Congress or for district judge or district attorney or any other district office in representative or judicial districts composed of four or more counties shall be required to pay more than one ($1.00) dollar to any county executive committee" etc.

Article 3108, Vernon's Annotated Civil Statutes authorizes the county executive committee to assess against each county or precinct officer, and each officer who is to be voted upon by the voters of one county only, a pro rata portion of the estimated expense of conducting primary elections. Article 3116, supra, further provides:

"Candidates for United States Senator or for Congressman-at-large and all those who are candidates for State offices to be voted upon by the qualified voters of the whole State shall pay to the chairman of the State Executive Committee one hundred ($100.00) dollars, and shall not be required to pay any other sum or sums to any other person or committee to have their names placed on the ticket as such candidate."

It will be noted that Article 3108, supra, provides in part:

". . . the county committee shall also carefully estimate the cost of printing the official ballots, renting polling places where same may be found necessary, providing and distributing all

Honorable Cecil H. Tate, Page 5

necessary poll books, blank stationery and voting booths required, compensation of election officers and clerks and messengers, to report the result in each precinct to the county chairman, as provided for herein, and all other necessary expenses of holding such primaries in such counties and shall apportion such cost among the various candidates for nomination for county and precinct offices only as herein defined, and offices to be filled by the voters of such county or precinct only (candidates for State offices excepted), in such manner as in their judgment is just and equitable, giving due consideration to the importance and emoluments of each such office for which a nomination is to be made. . ."

In view of the foregoing statutes it is our opinion that where candidates for district and State offices do not receive a majority of the votes cast at the general primary election a second primary election must be held in the State or such district or districts, as the case may be, on the fourth Saturday in August succeeding the general primary election, and only the names of the two candidates who received the highest number of votes for any office for which nominations were made at the general primary election shall be placed on the official ballot as candidates for such office at such second primary. It is our further opinion that the county Democratic Executive Committee when assessing the precinct, county and other candidates for such offices (candidates for State offices excepted) such candidates should be assessed such amounts necessary to pay the reasonable and necessary expenses for conducting both the general primary election and the second primary election regardless of whether or not the names of such candidates are on the ballot for the second primary. Unless this is done the expenses of such second primary election could not be paid. It is our further opinion that the Bailey County Democratic Executive Committee cannot legally refuse to print or have printed a ballot for the second primary although State and Congressional candidates are the only ones whose names will appear on such ballot, and as above stated such expenses should be assessed against the candidates above mentioned. (Precinct, county, etc.)

In connection with the foregoing we direct your attention to the case of Beene v. Waples, et al, 187 S. W.

191 (Supreme Court of Texas). In this case the appellant sued appellees in the District Court of Tarrant County, Texas, averring that the appellees constituted, respectively, the Chairman and members of the State Democratic Executive Committee, and the Chairman and members of the Tarrant County Democratic Executive Committee. The appellant was a candidate for the Democratic nomination for Justice of the Peace of Precinct No. 1, place No. 1, of Tarrant County, Texas, at the ensuing July primaries. The State Democratic Executive Committee had instructed the Tarrant County Democratic Executive Committee to assess against the appellant and the other candidates for district, county, and precinct offices at said July primaries, a sufficient amount to defray the expenses of the said July primaries, and as well also the expense of a second senatorial primary in Tarrant County, to be held on August 26th. The appellant sought to restrain, by injunction, the levy of an assessment to defray the expenses of the second senatorial primary election mentioned above.

The case was submitted to the trial court upon an agreed statement of facts which we do not deem necessary to set out here and the court refused any relief whatsoever to appellant, from which judgment the appeal was taken. An additional ten dollars was assessed against appellant as his pro rata part of the expenses for the second senatorial primary. Certain certified questions were presented to the Supreme Court regarding the Constitutionality of certain statutes involved. The Court held that the statute under attack was constitutional and did not answer the other questions submitted.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Ardell Williams_

Ardell Williams
Assistant

AW:mp

APPROVED JUN 11, 1942

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY _____ CHAIRMAN